**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARTY ISAACOWITZ,

       Plaintiff,

vs.                                No. CIV-09-638 JCH/RHS

DIALYSIS CLINIC INCORPORATED, a
Tennessee corporation, d/b/a DCI Inc.,
ESTHER ROGACION, JACKIE FRENCH

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

       This matter comes before the court on *Defendants' Motion to Dismiss* [Doc. 6]. Defendants

Dialysis Clinic, Inc. ("DCI"), Esther Rogacion, and Jackie French seek dismissal of all of Plaintiff's

claims with prejudice. The Court has considered Defendants' motion and memorandum in support

[Doc. 7], Plaintiff Marty Isaacowitz's objections to motion to dismiss [Doc. 13], Defendants' reply

memorandum [Doc. 20] and the Defendant's notice of additional authority [Doc. 27]. After full

consideration of the pleadings and the arguments contained therein, the Court finds that the motion

is well-taken and should be granted. As described herein, certain claims will be dismissed with

prejudice, and others without prejudice.

       The Plaintiff filed a Complaint that alleges violations of the Family Medical Leave Act, the

Americans with Disabilities Act, the New Mexico Human Rights Act, Title VII of the Civil Rights

Act regarding equal pay, and the Equal Pay Act. The Complaint also alleges religious

discrimination, sex discrimination, unfair labor practices regarding allocation of vacation time, and

a hostile work place environment. The Defendants request that the Court dismiss Isaacowitz's

Complaint with prejudice because it fails to state any claim upon which relief can be granted.

## FACTUAL BACKGROUND

Isaacowitz, a registered nurse, was employed by DCI at its Rio Rancho, New Mexico location from August 2005 until July 18, 2007.  *See* Doc. 1 ¶¶ 4 at 3, 12 at 5.  During his employment, Isaacowitz had been asked on multiple occasions to, and did, work overtime and additional shifts.  *See id.* ¶¶ 4 at 3, 11 at 5.  Esther Rogacion was a manager at DCI and Isaacowitz's supervisor.  *See id.* ¶ 4 at 3.

On April 23, 2007, Isaacowitz requested time off from June 29, 2007 through July 7, 2007 off for vacation.  *See id.* ¶ 8 at 4, Doc. 6-2 at 9.  DCI, through Rogacion, denied the request on the grounds that Isaacowitz "did not have enough vacation time to cover [the] request;" the company was "short staffed;" and "someone else had requested the same time off first."  Doc. 1 ¶ 8 at 4.  The person who allegedly had requested vacation time before Isaacowitz was a female with whom Rogacion would often go to lunch and in whom Rogacion would confide.  *See* Doc. 1 ¶ 31 at 10.

After April 23, 2007, but before Isaacowitz's termination, three hemodialysis technicians who were working at DCI were either fired or left their positions.  *See* Doc. 1 ¶ 10 at 5.  Rogacion asked Isaacowitz to perform tasks that previously were "always assigned to" hemodialysis technicians.  *Id.* ¶ 33 at 10.  After the third technician left, Isaacowitz was instructed to work as a technician, while other nurses, who had more experience in technician duties, were not instructed to work as technicians.  *See id.* ¶ 12 at 5.

On June 14, 2007, Isaacowitz used leave time during his work day to take his mother to see an optometrist.  *See id.* ¶ 6 at 3.  The optometrist recommended that Isaacowitz's mother see a retinal specialist.  *See id.* at 4.  Isaacowitz again used leave time during his work day on June 18, 2007 to take his mother to a retinal specialist.  *See* Doc. 1 ¶ 7 at 4.  The specialist diagnosed Isaacowitz's mother as having wet macular degeneration.  *Id.*  On June 25, 2007, Isaacowitz gave

2

Rogacion a letter requesting leave for the dates of June 29, 2007 until July 9, 2007 pursuant to the

Family Medical Leave Act.  *See id.* ¶¶ 7 at 4, 14 at 5.

> In his request, Isaacowitz states:
>
> "As you know, I have been mentioning for a few months now, that our family will be taking a cruise for 7 days commencing on June 29, 2007.  This may be the last time [my mother] will get to enjoy scenery with her family with her eyesight. Moreover, because of this very recent diagnosis, it is now apparent that I will have to take additional time off, even after the cruise to get other medical opinions as to the best approach to treatment . . . ."

Doc. 6-2 at 7.  In June and July 2007, Isaacowitz's mother had nine doctor's appointment relating

to her eye condition.  *See id.* ¶ 16 at 6.

Isaacowitz went on the cruise with his mother on June 29, 2007 and returned to work on July

9, 2007.  *See id.* ¶ 18 at 6.  The cruise was organized and sponsored by the Rio Rancho Jewish

Center, a Jewish synagogue.  *See id.*  ¶ 31 at 9.  Isaacowitz had told Rogacion that the cruise was

a religious outing.  *See id.*

On July 9, 2007, about a half hour after Isaacowitz punched in for work after returning from

the cruise, a co-worker told him to call Rogacion.  *See id.* ¶ 19 at 6.  Rogacion told him to punch out

because he was suspended and that he would receive a letter from her supervisor, Jackie French.

*See id.* ¶¶ 19, 20 at 7.  French, an administrator at DCI, sent to Isaacowitz a letter dated July 3, 2007

that recapped his previous request for vacation leave time and DCI's denial of the request and stated

that Isaacowitz's act of failing to appear for work during the days he was on the cruise was

considered insubordination.  *See* Doc. 7-2 at 9.  The letter further indicated that Isaacowitz was

being suspended pending further investigation and that his job was in jeopardy.  *See id.*  The letter

questioned whether Isaacowitz was claiming that the time he spent on the cruise was job-protected

leave time under FMLA and allowed him an opportunity to clarify his request.  *See id.*  French

indicated in the letter that DCI did not believe that the cruise qualified as job-protected leave and provided with the letter a physician's certification form for completion if Isaacowitz was claiming protected leave. *See id.* Isaacowitz returned the physician's certification form to French on July 16, 2007. *See* Doc. 1 ¶ 21 at 7. On July 17, French invited Isaacowitz and Rogacion to her office for a meeting, where Isaacowitz was fired. *See id.* French stated that Isaacowitz wanted, but did not need, to go on the cruise. *See id.*

DCI gave Isaacowitz a termination letter dated July 18, 2007 which stated that:

"We offered you an opportunity to explain the basis for what we viewed as your insubordination, that is, your request for vacation was denied previously and you chose to not report for work and go on vacation (a cruise) anyway . . .

. . . In response, you sent me a letter and a physician certification. In your letter, you claim that the time off should be considered job protected leave. However, the physician certification does not support your claim, and we have no information to support a claim that going on a cruise with your Mother from June 28th thru July 7th qualified for job protected leave . . . ."

Doc. 7-2 at 13.

On July 27, 2007, Isaacowitz submitted to French, as a clarification to cure the deficiency in his prior submissions under the FMLA, *see* Doc. 1 ¶ 26 at 8, a letter from his mother's physician dated July 24, 2007 stating that Isaacowitz needed to go on the cruise for his mother's safety. *See id.* ¶ 21 at 7; ¶ 25 at 8. As quoted by Isaacowitz in his Complaint, the letter stated:

"This letter is to certify that at the time Marty Isaacowitz accompanied his mother . . . on the cruise beginning on June 29, 2007, this was *medically necessary* as she needed Marty to accompany her *for safety reasons* . . . It would have been unsafe for her to go on the cruise without assistance from Marty."

Doc. 1 ¶ 25 at 8 (emphasis added).

French responded by saying, "Well, we are just going to leave it the way it is," which Isaacowitz interpreted to mean that he was still terminated. *Id.* ¶ 27 at 8. On his last paycheck,

4

dated July 29, 2007, DCI paid Isaacowitz for 90.85 hours of time off.  *See id.* ¶ 9 at 5.

Generally, Isaacowitz was dissatisfied by the treatment he received from Rogacion.  As examples, he states that once, while he was in the dialysis room and a dialysis-machine alarm was sounding, Rogacion entered the room, and instead of checking the machine, she told Isaacowitz that the alarm was sounding.  *See id.* ¶ 37 at 10-11.  Other times, while Isaacowitz was performing computer documentation, Rogacion would hover over him and ask what he was doing.  *See id.*  ¶ 37 at 11.

Isaacowitz worked with an "openly gay individual."  *Id.* ¶ 30 at 9.  Rogacion, who was also this individual's supervisor, would disregard his tardiness and absences.  *See id.*  Isaacowitz believed that Rogacion was sympathetic to the individual's sexual preferences because Rogacion is homosexual.  *See* Doc. 1 ¶ 30 at 9.

Rogacion also would selectively enforce the dress code by allowing the gay individual to wear blue jeans to work but instructing Isaacowitz not to wear jeans when he wore white jeans to work.  *See id.*  ¶ 37[1] at 11.  Rogacion would "often be very chummy with [the gay individual] even while he was wearing his blue jeans."  *Id.*

On or about October 31, 2007, after his termination, Isaacowitz discovered that a woman who worked with him had a higher income than his while he had been employed by DCI.  *See id.* ¶ 36 at 10.  This employee lacked dialysis experience when she was hired, while Isaacowitz had "upwards of one year of experience" when he was hired.  *Id.* ¶ 36 at 10-11.  Isaacowitz both trained and took orders from this employee.  *See id.* ¶ 36 at 11.  Isaacowitz's title was "technician" and this employee's title was "charge nurse."  *See id.*

---

[1]There are two ¶ 37 in the Complaint.  Here the Court refers to the second of the two paragraphs.

On March 7, 2008, Isaacowitz filed a complaint with the New Mexico Department of Labor Human Rights Division asserting discrimination in violation of the ADA and "because of [his] religion, Jewish, and [his] sex, male, in violation of Title VII of the Civil Rights Act and the New Mexico Human Rights Act," and because he is a heterosexual.  Doc. 6-2 at 1, Doc. 1 ¶ 29 at 9.  Also on March 7, 2008, Isaacowitz filed a second charge of discrimination with the Division asserting discrimination based on sexual orientation.  *See* Doc. 6-2 at 2.  Both claims were simultaneously filed with the U.S. Equal Employment Opportunity Commission ("EEOC").  The New Mexico Department of Labor, now known as the State of New Mexico Department of Workforce Solutions, found that Isaacowitz submitted insufficient evidence to show that he was unlawfully discriminated against on the basis of religion, disability, sex or sexual orientation, and issued a determination of no probable cause, dismissing with prejudice Isaacowitz's complaint.  *See* Doc. 6-2 at 4-6.  The EEOC adopted the state's findings and issued a Dismissal and Notice of Rights on April 22, 2009, which advised Isaacowitz of his right to sue.  *See* Doc. 1 ¶ 29 at 9.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   The rule requires more than a blanket assertion of entitlement to relief.  There must be enough factual allegations in the complaint to provide not only "fair notice" of the nature of the claim, but also "grounds" upon which the claim rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.

In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff.

6

*See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).  These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [he] has not alleged or that the defendants have violated the . . . laws in ways that [he has not] alleged."  *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The rules also do not require a court to "fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

In May 2007, the United States Supreme Court rejected the "no set of facts" standard that had been the motion to dismiss benchmark for many years and announced a clarified standard for motions to dismiss, stating that a complaint must contain enough factual allegations "'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  As a result, a plaintiff now has the burden to frame a "'complaint with enough factual matter (taken as true) to suggest'" entitlement to relief.  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  A plaintiff must do more than generally allege a broad array of conduct and must allege sufficient facts to "'nudge[ ] their claims across the line from conceivable to plausible.'"  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).  "Plausible" in this context refers to the scope of the allegations in the complaint: "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins*, 519 F.3d at 1247.  The requirement of plausibility serves two purposes: (1) to weed out claims that, without additional contentions, do not have a reasonable likelihood of success, and (2) to advise the defendants of the actual grounds upon which the claim against them is based.  *See Robbins*, 519 F.3d at 1248.  A court, therefore, must review a complaint with these purposes in mind.

## DISCUSSION

**I.  Isaacowitz fails to state a plausible claim under the Family Medical Leave Act.**

Isaacowitz states that he was wrongfully terminated under the Family Medical Leave Act ("FMLA").  Defendants, however, contend that the claims brought under the FMLA must be dismissed because Plaintiff was not entitled to leave under the FMLA as a matter of law.  *See* Doc. 7 at 6.  Defendants also assert that, because Rogacion and French are not employers under the FMLA, claims against them must be dismissed.  *See* Doc. 7 at 6.

The FMLA guarantees eligible employees twelve weeks of leave in a one-year period for the occurrence of certain events including "in order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves" either (1) "inpatient care in a hospital, hospice, or residential medical facility;" or (2) "continuing treatment by a healthcare provider."  29 U.S.C. § 2611(11).  When intermittent leave is leave is requested for the care of a parent, the leave, in order to be protected,  must be "medically necessary."  *See* 29 CFR § 825.202(b). "For intermittent leave or leave on a reduced leave schedule taken . . . to care for a parent. . ., there must be a medical need for leave and it must be that such medical need can be best accommodated through an intermittent or reduced leave schedule." *Id.*  Leave "may . . . be taken to provide care or psychological comfort to a covered family member with a serious health condition."  *Id.*

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, 29 U.S.C. § 2615(a)(1), and violators are subject to damages and appropriate equitable relief, *see* 29 U.S.C. § 2617(a)(1).  Under the FMLA, it is unlawful for an employer to discharge or discriminate against an employee for opposing a practice prohibited under the Act and

for taking part in proceedings or inquiries under the Act.  *See* 29 U.S.C. § 2615(a)(2), (b)(2).

There are two theories of recovery under the FMLA: the interference theory and the retaliation or discrimination theory.  *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).  Isaacowitz did not designate under which theory he seeks relief.

To succeed on the inference theory, "a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

To succeed on the retaliation or discrimination theory, a plaintiff must show that  "(1) [he] engaged in a protected activity; (2) [his employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quotation omitted).  Intentional discrimination must be shown through direct or indirect evidence.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  "[S]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements."  *Riggs v. Airtran Airways, Inc.*, 497 F.3d. 1108, 1117-18 (10th Cir. 2007).  If there is no direct evidence of discrimination, the *McDonnell Douglas*[2] burden-shifting process is used to indicate indirect discrimination.  *See id.* Under this procedure, once the plaintiff has established these prima face elements, then the burden shifts to the employer to produce evidence that the reason for the termination was legitimate and

---

[2]*McDonnell Douglas v. Green*, 411 U.S. 792 (1973)

nondiscriminatory. *Morgan*, 108 F.3d at 1323. If the employer proffers a nondiscriminatory reason, the burden then shifts back to the plaintiff to provide evidence that the reason advanced by the employer is pretextual. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154-55 (10th Cir. 2008).

For an employee to succeed on a claim of violation by the employer of the substantive rights of the FMLA, he must first establish his entitlement to the leave at issue. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). When care for a sick family member is only an incidental part of a leave request, the main purpose being to take a vacation, the leave does not qualify as protected leave under the FMLA. *See, e.g., Leakan v. Highland Cos.*, 1997 WL 33812215 at \*4 (E.D. Mich. Nov. 19, 1997) (unreported). Here, Isaacowitz has not alleged that his mother's cruise had a medical purpose, such as treatment for a serious health condition. The FMLA does not permit employees to take time off to take a vacation with a seriously ill parent, even if caring for the spouse is an incidental consequence of taking the parent on vacation. The purpose of the Act is not to provide a means for allowing an employee who lacks the necessary vacation time to take time of from work without permission. *See id* at \*4. Because going on a cruise was not medically necessary for Isaacowitz's mother, it cannot be said that it was medically necessary for him to accompany her.

Viewing the facts in the light most favorable to Isaacowitz, he has made no plausible claim that DCI violated the FMLA. While he was adversely affected by an employment decision related to his assertion of job-protected leave under the FMLA, Isaacowitz did not avail himself of a protected right under the FMLA and was not entitled to leave under the FMLA to take the cruise. Isaacowitz's FMLA claim will be dismissed with prejudice.

Isaacowitz contends that he was not given a mandatory fifteen days to "cure the deficiency" in the first certification "as required by law to do so." Doc. 1 ¶ 24 at 7. The FMLA allows an employer to "require that an employee's leave to care for the employee's covered family member

with a serious health condition . . . be supported by a certification issued by the health care provider of the employee or the employee's family member."  29 C.F.R. § 825.305(a).  If an employer then finds the provided certification incomplete or insufficient, it shall advise the employee "in writing what additional information is necessary to make the certification complete and sufficient."  29 C.F.R. § 825.305(c).  "The employer must provide the employee with seven calendar days . . . to cure any such deficiency.  If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave . . . ."  29 C.F.R. § 825.305(c).[3]  DCI does not appear to have provided a written statement of what was needed to make the certification complete and did not provide Isaacowitz with a cure period.  Nonetheless, Isaacowitz provided to DCI a follow-up letter from Dr. Song "for clarification purposes." Doc. 1 ¶ 26 at 8.  The follow-up letter did not remedy any deficiency with the certification.  The letter did not state that the cruise was medically necessary or related to his mother's treatment.  The letter stated that Isaacowitz's presence was medically necessary only for his mother's safety but it did not state that the vacation was medically necessary.  Isaacowitz cannot demonstrate that he was entitled to FMLA protected leave.  Accordingly, DCI's technical breach of its duty to offer an opportunity to cure causes Isaacowitz no harm.  Isaacowitz may not recover for that breach under the FMLA.

Because Isaacowitz cannot show that he was entitled to FMLA leave or that he availed himself of a protected right under the FMLA, his FMLA claims against his supervisors must also be dismissed with prejudice.  Even if Isaacowitz could show that DCI violated the FMLA, his claims against the individuals, French and Rogacion, would fail.  Under the FMLA, individuals cannot be

---

[3]The fifteen days to which Isaacowitz refers is actually the amount of time which an employee has to submit the initial certification after request by the employer.  *See* 29 C.F.R. § 825.305(b).

held liable as employers unless they fit the definition of employer under the statute. *See* 29 U.S.C. §§ 2615(a)(1), (a)(2). "Employer" has been defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year" and includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4). Isaacowitz has not alleged that Rogacion and French qualify as "employers " under the FMLA. Accordingly, the claims against Rogacion and French under the FMLA must be dismissed with prejudice.

## II.   **Isaacowitz fails to state a valid claim under the Americans with Disabilities Act**.

Isaacowitz alleges discrimination in violation of the Americans with Disabilities Act ("ADA"). He asserts that Rogacion demonstrated a pattern of insensitivity and discrimination regarding employees whose families were experiencing severe health problems. Isaacowitz contends that he was discriminated against due to his association with his mother, who has a disability. In contrast, Defendants argue that the "ADA does not required an employer to provide reasonable accommodation to employees that are associated with a disabled individual." Doc. 7 at 11.

Similar to the FMLA, under the ADA individuals cannot be held liable unless they otherwise qualify as an employer as defined under the Act. *See Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999). The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent for such person"  42 U.S.C. § 12111(5)(A). Isaacowitz has not alleged any facts to demonstrate that Rogacion and French qualify as "employers." For this reason, the ADA claims against Rogacion and French must be dismissed without prejudice.

Title I of the ADA governs employment relationships and generally provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The definition of "covered entity" includes "employer, employment agency, labor organization or joint labor-management committee." 42 U.S.C. § 12111(2). The statutory construction of the ADA allows for a claim for association discrimination by defining "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

> Four elements must exist to establish a prima facie case of ADA-association discrimination:
>
> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
>
> (2) the plaintiff was subjected to adverse employment action;
>
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
>
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008). "A family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA." *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1082 (10th Cir. 1997) (citing 29 C.F.R. § 1630.8).

The same burden-shifting framework used in the analysis of a retaliation or discrimination claim under the FMLA is used in the ADA-association-discrimination analysis. *See Trujillo*, 524 F.3d at 1154. Isaacowitz has the initial burden of establishing the prima facie elements, but he did

13

not meet that burden. Accepting his asserted facts as true, Isaacowitz does not proffer any facts supporting a valid claim for association discrimination under the ADA. It appears that he is arguing that DCI should have accommodated his request to vacation with his disabled mother simply because she has an eye condition. Without providing supporting facts, Isaacowitz states that Rogacion "demonstrated a pattern of insensitivity" with regard to individuals who have a family member with severe health problems, *see* Doc. 1 ¶ 29 at 9. But the ADA does not require an employer to make any "reasonable accommodation" for an employee's relatives' disabilities. It requires providing accommodation only to the employee who has physical or mental limitations or impairments. *See* 42 U.S.C. § 12112(b)(5);[4] *see Den Hartog*, 129 F.3d at 1084. Even if the reason for an absence or tardiness is to care for a family member or spouse, an employee who violates an employer's neutral policy concerning attendance or tardiness may nevertheless be dismissed. *See Den Hartog*, 129 F.3d at 1082 (citing H.R. Rep. No. 101-485, pt. 2, at 61-62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343-44). The employer is not required to provide any accommodation to the non-disabled employee; the individuals covered under § 12112(b)(4) are individuals who are discriminated against solely because of their association with a disabled individual. *See Den Hartog*, 129 F.3d at 1083.

Thus, while Isaacowitz can show the first three elements of an association-related ADA violation, he has not pled facts showing that "an adverse employment action occurred under

---

[4]42 U.S.C. § 12112(b)(5)(A) (1994) defines the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, . . . ." Further, 42 U.S.C. § 12112(b)(5)(B) (1994) defines "discriminate" to include "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant."

14

circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Trujillo*, 524 F.3d at 1154. Isaacowitz was terminated not because his mother had a disability but because, despite his vacation request having been denied, he did not go to work so that he could take a cruise with his mother. The ADA does not require DCI to accommodate an employee to care for a family member with a disability; thus the statute did not require DCI to allow Isaacowitz to take time, at his discretion, to vacation with his disabled mother. There are no facts to support a claim that DCI discriminated against Isaacowitz because Isaacowitz's mother may have a disabling condition. No discrimination based on association has been established, and the Defendants' motion to dismiss will be granted without prejudice with regard to this claim.

### III. Isaacowitz fails to state a plausible claim for sexual-orientation discrimination under the New Mexico Human Rights Act.

Isaacowitz contends that he was discriminated against because he is heterosexual. He asserts that a gay individual was given unfair preference in the office in violation of the New Mexico Human Rights Act, NMSA 1978 § 28-1-1, et seq. (NMHRA). *See* Doc. 1 ¶ 30 at 9. Defendants assert Isaacowitz has not shown that he is a member of a protected class and that the gay employee's tardiness and absences are irrelevant because Isaacowitz was fired for insubordination, not for tardiness and absence. *See* Doc. 7 at 13.

Under the NMHRA, an employer may not discriminate against an employee based on his or her sexual orientation. "Sexual orientation" is defined as "heterosexuality, homosexuality or bisexuality, whether actual or perceived." NMSA 1978 § 28-1-2P. The NMHRA allows individuals to bring a lawsuit against an employer in the appropriate district court for a violation of the Act provided they have first exhausted their administrative remedies. *See Luboyeski v. Hill*, 117

N.M. 380, 382, 872 P.2d 353, 355 (N.M. 1994).  The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer."  NMSA 1978 § 28-1-2B. The New Mexico Supreme Court has rejected the theory that there is generally no personal liability under the NMHRA.  *See Sonntag v. Shaw*, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). Nevertheless, "[c]ompliance with the grievance procedure in the [NMHRA] is a prerequisite to suit in district court under the Act." *Luboyeski*, 117 N.M. at 382, 872 P.2d at 355.

Isaacowitz did not make assertions against Rogacion or French in his claims submitted to the New Mexico Department of Labor.  Accordingly, Isaacowitz has failed to exhaust his remedies against them before seeking a remedy in court.  His claims against the individuals will be dismissed with prejudice.  Isaacowitz did, however, satisfy the exhaustion requirements with regard to his similar claim against DCI.

To ascertain a prima-facie case under the NMHRA, courts use the *McDonnell Douglas* burden-shifting process discussed *supra*.  *See Cates v. Regents of the N.M. Inst. of Mining & Techn.*, 124 N.M. 633, 637-38, 954 P.2d 65, 69-70 (N.M. 1998).  There are no New Mexico cases directly on point with regard to this sexual-orientation claim.  As previously stated, the plaintiff has the burden to first establish a prima-facie case of discrimination.  In this instance, the "plaintiff[] must demonstrate 1) membership in a protected class, 2) adverse employment action, and 3) disparate treatment among similarly situated employees."  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  Adverse employment actions "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 1150.  The adverse employment action must have occurred "under circumstances which give rise to an inference of unlawful discrimination."  *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1227

16

(10th Cir. 2000). "'Similarly-situated' employees are those who deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007). "Even employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant." *Id.* (citations omitted"). A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of providing legally relevant comparisons to show that the employees were similarly situated. *Watts v. City of Norman*, 270 F.3d 1288, 1293-4 (10th Cir. 2001). Undoubtedly, the burden on a plaintiff in articulating a prima-facie case of discrimination is "slight," and is based only on coming forward with the "small amount of proof necessary to create [an inference of discrimination]." *Orr*, 417 F.3d at 1149 (modified in original).

The presumption of invidious intent created by establishing a prima-facie case under *McDonnell Douglas* arises when the plaintiff belongs to a disfavored group. *Notari v. Denver Water Dep't.*, 971 F.2d 585, 589 (10th Cir.1992). "When [, however,] a plaintiff is a member of a historically favored group . . . an inference of invidious intent is warranted only when 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1149 (10th Cir. 2008) (quoting *Notari*, 971 F.2d at 588-89).

In this case, Isaacowitz claims disparate disciplinary treatment to create an inference that he was discriminated against because of his sexual orientation. Isaacowitz asserts that he was treated less favorably than his gay co-worker. *See* Doc. 1 ¶30 at 9. Isaacowitz does not assert that he is a member of a protected class, perhaps because he is a member of a historically favored

17

group—heterosexuals.  But Isaacowitz presents no facts to show that the gay man took vacation leave when it had been denied and was not disciplined, nor does he allege facts to show that he was disciplined for absences or tardiness other than for taking vacation time that had been denied.  He has therefore failed to state facts showing that the circumstances were similar.  Plaintiff did not indicate that there were other instances or people who were treated differently then he was. Isaacowitz has failed to show that he was subject to a different standard than his homosexual coworkers.[5]  Isaacowitz has pointed to nothing to indicate that his sexual orientation played any role in his treatment.[6]  Assuming all the facts he presented are true, Isaacowitz has failed to come forward with a plausible claim that he was treated differently than similarly situated employees because of his sexual orientation.[7]  This claim will be dismissed without prejudice as to DCI.

**IV.   Isaacowitz failed to exhaust his remedies with regard to his claim of religious or sex discrimination in the denial of his original vacation request of April 23, 2007.**

Isaacowitz asserts that he was discriminated against because of his religion and gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII") because his April 23, 2007 vacation request was denied.  Defendants argue that Isaacowitz failed to exhaust his remedies by not bringing his claim with the EEOC until almost a year after the denial.  Defendants

---

[5]While in another count of his Complaint, Isaacowitz complains that Rogacion allowed Aguilar to wear blue jeans in the office while instructing Isaacowitz not to wear his white jeans, he did not assert this as part of his sexual orientation discrimination claim under the NMHRA.

[6] Isaacowitz points to favorable treatment by Rogacion to another worker who is a female, but does not point to sexual orientation as the basis for that favoritism. *See* Doc. 1 ¶ 31 at 10.

[7]It is notable that under the facts alleged, Isaacowitz's termination was based on insubordination, not tardiness and absence.  Isaacowitz made an improper claim for leave under the FMLA after being denied vacation leave for that time.  He then failed to appear for work during that time.

additionally contend that Isaacowitz has failed to state a claim based on religion because a vacation is not a religious practice.

Similar to the FMLA and ADA, under Title VII, suits against individuals are "inappropriate." *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993)).  The majority view is "that, taken as a whole, the language and structure of . . . Title VII continue[s] to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors." *Id.* at 901.  Accordingly, all of Isaacowitz's claims under Title VII against Rogacion and French will be dismissed with prejudice.

"Title VII makes it unlawful for an employer to 'discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion, sex . . . .'"  42 U.S.C. § 2000e-2(a)(1).  Prior to pursuing a Title VII claim in federal court, however, a plaintiff must exhaust his administrative remedies.  *See Kahder v. Apin*, 1 F.3d 968, 970 (10th Cir. 1993).  Typically, to be timely, a plaintiff must file the charge with the EEOC within 180 days after the alleged unlawful employment practice occurs.  *See* 42 U.S.C.§ 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998).  If prior to filing a charge with the EEOC, a complainant initiates a charge with the state or local agency, then the time for filing with the EEOC does not expire until 300 days after the unlawful employment practice occurred.  *See Deflon v. Danka Corp., Inc.*, 1 Fed. Appx. 807, 812 (10th Cir. 2001) (unpublished).  Generally, failure to timely file results in dismissal for failure to exhaust administrative remedies. *See Kahder,* 1 F.3d at 971.

In order to comply with the requirements of NMSA 1978 § 28-1-10(A), Isaacowitz must have filed his charge regarding the April 23, 2007 denial of vacation leave with the State of New Mexico by February 17, 2008.  He did not file his charge with the State or the EEOC until March

8, 2008, 320 days after the denial.  Isaacowitz failed to timely exhaust his administrative remedies with regard to these claims.  Defendants' motion will be granted and these claims dismissed with prejudice.

**V.    Isaacowitz fails to state a valid claim for sex discrimination in violation Title VII regarding equal pay.**

Isaacowitz claims that after he was fired from DCI, he discovered that he was paid less than a female coworker.  Isaacowitz asserts that he performed the same duties but was not paid equally with the female coworker, a charge nurse, in violation of Title VII regarding equal pay.  Defendants assert that Isaacowitz has not shown he occupied a job similar to that of the higher paid female.

To establish a claim of wage discrimination on the basis of gender or national origin under Title VII, a plaintiff must prove that the employer intentionally discriminated against him because of his or her sex, as prohibited by Title VII.  *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005).  The plaintiff must show that he "occupies a job similar to that of [the] higher paid [fe]male[]."  *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (citing *Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1114 (10th Cir. 2005), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  If the plaintiff can establish his prima facie case, the Court then uses the *McDonnell Douglas* burden-shifting framework to evaluate whether the claim can survive the motion.  *See Mickelson*, 460 F.3d at 1311.

Even assuming them as true, the facts presented by Isaacowitz in his complaint do not demonstrate that his job as technician was similar to the female coworker's position of charge nurse. The coworker did not perform technician duties as Isaacowitz did.  Isaacowitz worked the "floor," *see* Doc. 1 ¶ 36 at 11; she did not.  Although he provided some training to the female coworker, she directed his work.  The work being performed was not substantially similar. Because he has not

alleged that the positions are not substantially similar, Isaacowitz cannot succeed on a claim of sex discrimination under Title VII with regard to equal pay.  Isaacowitz claim of sex discrimination as to equal pay fails, and his claim will be dismissed without prejudice.

**VI.    Isaacowitz fails to state a valid claim regarding discrimination and unfair labor practices in allocation of vacation time.**

Isaacowitz asserts that by not having a vacation schedule book out in the open or having vacation and sick leave time posted on his paycheck the Defendants were acting illegally. Isaacowitz states that because the vacation request book was not kept out in the open, Rogacion could allocate vacation time on personal preference and not first come, first serve.  Isaacowitz asserts that "[the failure to leave the vacation book out in the open] is not consistent with almost every single company of DCI's size and scope," Doc. 1 ¶ 9 at 5.  Defendants argue there is no law to support Plaintiff's complaint and Isaacowitz has stated no facts entitling him to relief.  Doc. 7 at 17.

Isaacowitz does not point to any law that requires a company of any specific size to provide such information in a manner he indicates.  Isaacowitz also does not identify any relief that a court could grant him with regard to his allegation.  He no longer works for DCI.  A change in their policy would not help him in any way.  Many of the facts asserted by Isaacowitz are his opinion or belief. Isaacowitz has failed to plead facts or law entitling him to relief.  This claim will be dismissed without prejudice.

**VII.    Isaacowitz fails to state a valid claim of a hostile work environment under Title VII**

Isaacowitz asserts that he endured a hostile work environment at DCI because Rogacion admonished him for wearing jeans to work.  He further alleges that in one instance, while the alarm in the technician room was sounding, she told Isaacowitz that the alarm was sounding.  He alleges that on other occasions, Rogacion watched him while he worked on the computer.  Defendants

contend that Isaacowitz's hostile work environment must fail because he has not exhausted his remedies with the state agency in that he did not bring assert this claim when he filed his claims with the EEOC.

With regard to hostile work environment claims, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 117.

"A plaintiff must exhaust his administrative remedies before bringing suit under Title VII." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997) (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996)). If the plaintiff fails to exhaust his remedies, the court lacks subject matter jurisdiction to hear the claim. *See Strozier v. Potter*, 71 Fed. Appx. 802, 803 (10th Cir. 2003) (unpublished). "The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997).

Isaacowitz was effectively terminated from his job on July 18, 2007. Accordingly, that is the very latest date which he could arguably claim a hostile work environment event occurred. The 300th day after the date Isaacowitz was terminated was May 13, 2008. He would have had to have filed his hostile work environment charge with the EEOC on or before that date in order to pursue

that claim in this court. Isaacowitz did not file a charge with the EEOC regarding any claim of hostile work environment. His opportunity to exhaust his remedies has expired. Isaacowitz failed to exhaust him remedies, and therefore his claim will be dismissed with prejudice.

**VIII.   Isaacowitz fails to state a valid claim under the Equal Pay Act.**

Similar to his argument regarding equal pay under Title VII, Isaacowitz claims that the disparity in pay between the female coworker and him violated the Equal Pay Act. Defendants respond that Isaacowitz has not demonstrated that the positions were substantially equal.

While similar in theory to an equal pay claim under Title VII, an Equal Pay Act decision is based on a different analysis. The analysis under the Equal Pay Act does not include use the *McDonnell Douglas* burden-shifting framework. *Mickelson*, 460 F.3d 1304, 1311 (10th Cir. 2006). Instead, to establish an Equal Pay Act claim under 29 U.S.C. § 206(d)(1), a plaintiff "has the burden of proving (1) that [he] was performing work which was substantially equal to that of the [female] employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the [fe]male employees were paid more under such circumstances." *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993). "The focus [in this analysis] is on the actual job requirements and duties." *Moorhead v. United States*, 88 Fed.Cl. 614, 619 (2009). Once the prima facie case is established, the burden shifts to the defendant to demonstrate that the disparity in wages was due to one of the following: "(1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality output; [or] (4) a disparity based on any factor other than sex." *Tidwell* 989 F.2d at 409.

In this matter, the burden never shifts to the employer to justify the disparity in wages, because, even assuming them as true, the facts alleged by Isaacowitz in his complaint do not show that he was performing work which was substantially equal to that performed by the female

coworker with regard to skills, duties, supervision, effort and responsibility. Isaacowitz was a technician[8] and she was a charge nurse. Doc. 1 ¶ 36 at 11. She and Isaacowitz had different skills. Isaacowitz had more dialysis experience when he was hired than the female coworker had when she was hired. Doc. 1 ¶ 36 at 10-11. Although at times he provided training to her, she directed Isaacowitz's work. Doc. 1 ¶ 36 at 11. The working conditions, job requirements and duties of the two positions were also not the same. Isaacowitz "worked the floor;" she did not. *See id.* Isaacowitz and the female coworker were not performing substantially equal jobs. The disparity in wages between them would not violate the Equal Pay Act, and therefore this claim will be dismissed with prejudice.

     **IT IS THEREFORE ORDERED** that *Defendants' Motion to Dismiss* [Doc. No. 6] is **GRANTED**.

**UNITED STATES DISTRICT JUDGE**

---

[8]Isaacowitz has not alleged facts regarding his duties before he was assigned to fill the role of technician, and therefore the Court did not consider his prior duties in this analysis.